UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| MARILYN DEE GIBSON, FRED LOGAN GIBSON, BRAD LOGAN GIBSON, and KENT ALAN GIBSON, | ) | |
| Plaintiffs, | ) | |
| v. | ) | 3:07-CV-365 (SHIRLEY) |
| WALLACE THURMAN and LITTLEBROOK CREMATION COMPANY, INC., | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73(b) of the Federal Rules of Civil Procedure, and the consent of the parties, for all further proceedings, including entry of judgment [Doc. 35]. Wallace Thurman and Littlebrook Cremation Company, Inc. (collectively "the Defendants"), have filed numerous dispositive motions including: a Motion to Dismiss, or in the Alternative, for Summary Judgment [Doc. 9]; Second Motion to Dismiss [Doc. 17]; Motion to Dismiss Amended Complaint [Doc. 24]; and Second Motion for Summary Judgment [Doc. 33]. In their motions, the Defendants claim Kent Alan Gibson and Brad Logan Gibson ("the Brothers") have no standing or cause of action with regard to issues related to cremains of their deceased brother, Mark Gibson ("Mark"). The Defendants also argue that they are entitled to judgment as a matter of law on the various torts claims made by Mark's parents, Marilyn Dee Gibson and Fred Logan Gibson.

## I. FACTS

On April 29, 2007, Mark Gibson ("Mark") died at his home in Clinton, Tennessee. [Doc. 23 at 7]. Mark's only heirs were his parents, Plaintiffs Marilyn Dee Gibson and Fred Logan Gibson ("the Parents"). [Doc. 23 at ¶ 3]. On May 1, 2007, Mark was cremated by Defendant Littlebrook Cremation Company, Inc., ("Littlebrook") in Maryville, Tennessee. [Doc. 23 at ¶ 9]. The following day, cremains ("first cremains") purported to be Mark's were mailed to Plaintiff Brad Gibson, Mark's brother, in Foley, Alabama. [Doc. 23 at ¶ 10]. On May 10, 2007, the first cremains arrived at the Foley Post Office, where Plaintiff Kent Gibson, another of Mark's brothers, picked them up from the Postmaster. [Doc. 23 at ¶ 12]. That evening, during a private family memorial service for Mark, the Gibson family opened the package and discovered that the first cremains were labeled "Keith Alan Vincent." [Doc. 23 at ¶ 13].

Plaintiff Kent Gibson contacted law enforcement, who put him in touch with Biereley-Hale Funeral Home Director Barry Self ("Mr. Self") and the Madisonville Police, which eventually led to contact with Keith Alan Vincent's widow, Sandra Vincent. [Doc. 23 at ¶ 14]. Plaintiff's subsequently hired Counsel Douglas A. Trant ("Mr. Trant") and shipped the first cremains to him. [Doc. 23 at ¶ 15].

On May 16, 2007, Defendant Wallace Thurman ("Mr. Thurman"), Vice-President and General Manager of Littlebrook, wrote a letter to the East Tennessee Veterans' Cemetery stating, in part, that the cremains ("second cremains") buried at East Tennessee Veteran's Cemetery on May 3, 2007 were not those of Keith Alan Vincent, but were the cremains of Mark Stephen Gibson. [Doc. 23 at ¶ 16].

On May 21, 2007, Mr. Trant received the first cremains. [Doc. 23 at ¶ 18]. The next day, he took the first cremains to Dr. William Bass ("Dr. Bass"), a forensic anthropologist, for identification. [Doc. 23 at ¶ 19]. On June 14, 2007, Dr. Bass identified the first cremains as Keith Alan Vincent. [Doc. 23 at ¶ 21]. The following day, Mr. Trant received the first cremains from Dr. Bass. [Doc. 23 at ¶ 22].

On June 19, 2007, an Agreed Order to disinter the second cremains buried at East Tennessee Veterans' Cemetery was entered by the Knox County Chancery Court. [Doc. 23 at ¶ 24]. The second cremains were disinterred on July 6, 2007, and discovered to be labeled as "Betty June Reed." [Doc. 23 at ¶ 25].

On July 6, 2007, Mr. Thurman notified Mr. Trant that cremains ("third cremains") labeled Mark Stephen Gibson were available at Littlebrook. [Doc. 23 at ¶ 26]. The same day, Mr. Trant picked up the third cremains and delivered them to Dr. Bass for identification. [Doc. 23 at ¶ 27]. On July 17, 2007, Dr. Bass confirmed that the third cremains were in fact those of Mark Stephen Gibson. [Doc. 23 at ¶ 28]. Subsequently, the third cremains were shipped to Plaintiffs for proper disposition. [Doc. 23 at ¶ 29].

Plaintiffs commenced this action on September 19, 2007 alleging negligence, negligence per se, and reckless infliction of emotional distress. [Doc. 1]. The Plaintiffs were later permitted to file an amended complaint by an order dated September 23, 2008. [Doc. 21]. The Amended Complaint, filed on October 7, 2008, alleges three separate counts. [Doc. 23]. In the first count, Plaintiff parents, Marilyn and Fred Gibson, allege negligence and negligence per se against Defendants Wallace and Littlebrook for violations of Tennessee Code Annotated §§ 62-5-507(h), 62-5-507(j), and 62-5-511. [Doc. 23 at 30-37]. In count two, the Plaintiff parents allege reckless

infliction of emotional distress. [Doc. 23 at 38-43]. In the third count, the Plaintiff brothers, Brad and Kent Gibson, also allege reckless infliction of emotional distress. [Doc. 23 at 44-50]. The Plaintiffs seek $500,000 in compensatory and $500,000 in punitive damages for severe emotional distress, physical pain and suffering, interference with the right of disposition, expenses resulting from medical and other treatment costs, cost of the cremains search, court costs, and attorney's fees. [Doc. 23 at 51-52]. In response, the Defendants have filed a Motion to Dismiss the Amended Complaint. [Doc. 24], and a Second Motion for Summary Judgment [Doc. 33], against the Plaintiff brothers. The Defendants claim that the Plaintiff brothers lack standing to sue for damages concerning Mark's cremains. [Doc. 33].

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissal of a complaint is proper if it fails to state a claim for which relief can be granted. In considering a motion to dismiss, "the issue is not whether a plaintiff will ultimately prevail but whether the movant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). It is not the court's duty to weigh evidence or evaluate a witnesses' credibility. Cameron v. Seitz, 38 F.3d 264, 270 (6th Cir. 1994). Instead, the court should deny the motion to dismiss unless it is clear that the plaintiff can prove no set of facts in support of their claim that would entitle them to relief. Id.

As opposed to granting dismissal, granting a motion for summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of establishing there is no genuine issue of material fact lies upon the moving party. Celotex Corp. v. Catrett, 477 U.S.

317, 330 n.2 (1986). The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could find in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. Id.

The Court must determine whether sufficient evidence has been presented to make the issue of fact a proper jury question, but the Court is not to weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Id. at 249. Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial–in other words, whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

**III. ANALYSIS**

This is a diversity action where the Plaintiffs are residents of Alabama and the Defendants are residents of Tennessee and the amount in dispute is in excess of $75,000.00. Because jurisdiction in this case is based on the diversity of the parties, the Court is to apply the law of the forum state. Himmel v. Ford Motor Co., 342 F.3d 593, 598 (6th Cir. 2003); see also 18 U.S.C. § 1332. Thus, as the parties concede, the substantive law of Tennessee applies to analysis of this case. Nonetheless, the availability of summary judgment or dismissal in diversity actions is governed by the federal standard, as embodied in the Federal Rules of Civil Procedure and discussed above, rather than by state law. See Biegas v. Quickway Carriers, Inc., ___ F.3d ____, 2009 WL 2191452 (6th

Cir. July 24, 2009); Kerobo v. Southwestern Clean Fuels, Corp., 285 F.3d 531, 533 (6th Cir. 2002).

*A. Brad and Kent Gibson's Reckless Infliction of Emotional Distress Claim*

In their motions [Docs. 9, 17, 24, and 33], the Defendants claim that Mark's brothers have no standing to bring claims derived from the disposition of their brother's cremains. The Defendants argue that only Mark's parents have standing to bring a suit or cause of action against the Defendants in connection with the disposition of Mark's cremains. [Doc. 9.] The Brothers respond that their claims, and thus their standing to sue, are not based on any assertion that they had the right to control the disposition of the body. [Doc. 13.] Instead, the Brothers assert that their claims are based upon the reckless infliction of emotional distress caused by the Defendants' conduct, and therefore, the Brothers maintain that they have standing to bring this claim.

In Crawford v. J. Avery Bryan Funeral Home, 253 S.W.3d 149 (Tenn. Ct. App. 2007), the Tennessee Court of Appeals examined the relationship between claims for emotional distress and the right to disposition of a body. In Crawford, the decendent's wife provided his remains to the Tri-State Crematory for cremation. Id. at 152. The decedent's relatives later received cremains represented to them as containing the ashes of the deceased as well as a death certificate that states the cremation of the body was performed by Tri-State Crematory. Id. at 151. Several months later, the relatives became aware of an investigation proceeding against the, now infamous, Tri-State Crematory, in which it was discovered that Tri-State was an unlicensed facility and was dumping bodies on the ground or in mass graves. Id.

The decedent's wife participated in a class action lawsuit against the parties involved in disposition of her husband's body and, after receiving a settlement, executed a release in favor of the J. Avery Bryan Funeral Home, the defendant in the Crawford case. Id. at 156. Thereafter, the

parents and siblings of the deceased brought the suit which was the subject of the Crawford opinion. Id. at 150. The trial court dismissed the suit finding that neither the siblings nor parents had standing to bring the various claims in the suit, including negligent and intentional infliction of emotional distress and intentional mishandling of a corpse. Id. at 153. The decedent's sister appealed the trial court's decision, but the Tennessee Court of Appeals affirmed the lower court's decision. Id. at 160.

The court in Crawford endorsed Restatement (Second) of Torts § 868, which states: "One who intentionally, recklessly, or negligently removes, withholds, mutilates or operates upon the body of a dead person or prevents its proper interment or cremation is subject to liability to a member of the family who is entitled to the disposition of the body." Crawford, 253 S.W.3d at 157. Building on this rule, the court concluded that "in Tennessee, any tort claims for negligent, reckless or intentional interference with a dead body and the like can be brought only by the person or persons who have the right to control the disposition of the body." Id. at 159-60. Nonetheless the court later stated "we are not holding that someone who does not have control over disposition of a decedent's body never can bring a tort claim for emotional distress and the like." Id. at 160. The court stated that, for example, where a family member witnesses a body being mutilated in their presence they would not be precluded from bringing suit. Id. at 160. And as previously stated, the court affirmed the lower court's decision to dismiss all of the claims brought by the sister, including those for infliction of mental distress. Id.

In a companion case to Crawford, Akers v. Buckner-Rush Enter., Inc., 270 S.W.3d 67 (Tenn. Ct. App. 2007), the Tennessee Court of Appeals addressed the order of priority of different relatives for disposition of a body. The court did not find a statute directly addressing the issue, by the court found Tennessee Code Annotated § 68-30-109, a statute stating what relatives may make anatomical

gifts, to be situationally analogous. Id. at 73. Thus, the court endorsed the following order of priority for disposition of a body: the surviving spouse, adult children of the decedent, parents of the decedent, adult siblings of the decedent, adult grandchildren of the decedent, and grandparents of the decedent. Id.

Turning to the present case, the Court finds that in Crawford the Tennessee Court of Appeals explicitly held that any claim for emotional distress in cases involving the handling of a dead body can only be brought by the person or persons having right of disposition of the body. Crawford, 253 S.W.3d at 159-60. Admittedly, the Court softened this brightline rule, by noting that in extreme cases, a family member might retain standing to bring a claim despite not being the person entitled to oversee disposition. However, the only example provided by the court was where a body was mutilated in the presence of a family member. Id. The Court finds that the matter before it does not rise to the level of behavior isolated by the court in Crawford. Thus, after reviewing pertinent law and facts, the Court concludes that Mark's parents, Marilyn Dee Gibson and Fred Logan Gibson, are the only parties that have standing to bring a claim for emotional distress because they are the only persons with the right of disposition of Mark's remains. Further, the Court finds that, based on the example given in Crawford, the facts of this case do not garner deviation from the rule tying standing to the right to disposition.

The Defendants have made two prayers for relief: one requesting dismissal of the Brothers' claim and one requesting summary judgment in favor of the Defendants' on the Brothers' claim. Because the Court cannot say that it was clear that the Brothers could prove no set of facts in support of their claim, the Court finds that granting dismissal is not appropriate. Instead, the Court finds that, in light of Crawford, there is no genuine issue of material fact remaining as to Plaintiffs Brad Logan

Gibson and Kent Alan Gibson's standing to bring a claim for reckless infliction of emotional distress. As a matter of law, neither brother has standing to bring such a claim because neither had a right of disposition of the decedent's body. Because there is no genuine issue of material fact when the facts are viewed in a light most favorable to the Plaintiffs, the Defendants are entitled to summary judgment. Accordingly, Defendants Second Motion for Summary Judgment **[Doc. 33]** will be **GRANTED as to Brad Logan Gibson and Kent Alan Gibson's claim for reckless infliction of emotional distress (Count III)**.

*B. The Parents' Claims*

In their motions for dispositive relief [Docs. 9, 17, 24, 33], the Defendants argue that, for a number of reasons, they should be granted summary judgment on the Parents' claims. The Defendants first assert that while the Parents have standing to bring this action, the Defendants are only liable for acts or omissions done with malicious purpose, in bad faith, or in a wanton or reckless manner, and on this basis, the Defendants claim that Tennessee Code Annotated § 62-5-511(a)(2) insolates them from liability. The Defendants argue that Tennessee Code Annotated § 62-5-511 does not provide a civil cause of action and that, as a matter of law, the Amended Complaint [Doc. 14] does not allege facts which support the Parents' claims for negligence and negligence per se (Count I). Similarly, the Defendants argue that the facts alleged by the Parents are not sufficient to support a claim for reckless infliction of emotional distress (Count II), and that the Defendants are entitled to judgment as a matter of law on these claims.

The Parents respond [Doc. 20] that § 62-5-511 is cited in the Amended Complaint as a governing standard of care for their negligence per se claim. The Parents contend that the plain language of § 62-5-511 indicates that the heightened requirements of bad faith, malice, wantonness,

or recklessness only apply if the disposal of the cremains was done in accordance with the instructions set forth by the decedent's heir or representative, see § 62-5-511(a)(2). The Parents' also argue that even if those heightened requirements must be met, the Amended Complaint [Doc. 23] presents sufficient allegations of reckless conduct on the part of the Defendants. Further, the Parents maintain that they have alleged facts upon which a reasonable jury could find in their favor on their claims for reckless infliction of emotional distress and negligence.

1. Negligence and Negligence Per Se (Count I)

The Parents reference § 62-5-511 and the standards set out therein in Count I of the Amended Complaint. [Doc. 23 at ¶ 31, 32]. Count I is entitled "Negligence, Negligence Per Se." The Parents also allege that they belong to the class of persons intended to be protected by the statute and the injuries that occurred are the type which the statute was meant to guard against. [Doc. 23 at ¶ 35, 36]. In Tennessee, "[t]he two threshold questions in every negligence per se case are whether the plaintiff belongs to the class of persons the statute was designed to protect and whether the plaintiff's injury is of the type that the statute was designed to prevent." Whaley v. Perkins, 197 S.W.3d 665, 673 (Tenn. 2006). Comparing the title and contents of Count I with the standard for bringing a claim based upon negligence per se in Tennessee, the Court finds that the Parents have alleged negligence per se in Count I and have employed Tennessee Code Annotated § 62-5-511, as the statute alleged to have been violated.

The Defendants would have the Court read § 62-5-511 as the exclusive remedy for persons wronged by crematoriums. Section § 62-5-511 provides as follows:

> (a) The operator of a crematory facility is not liable for damages in a civil action for any of the following actions or omissions, unless the actions or omissions were made with malicious purpose, in bad faith, or in a wanton or reckless manner:

> (1) Having performed the cremation of the decedent, or having released or disposed of the cremated remains in accordance with the instructions set forth by the decedent or an heir or personal representative of the decedent;
>
> (2) Having performed the cremation of the decedent or body parts removed from the decedent or living person having released or disposed of the cremated remains in accordance with the instructions set forth by the decedent or an heir or personal representative of the decedent; or
>
> (3) Any failure to correctly identify a dead human body prior to cremation.

Tenn. Code Ann. § 62-5-511.

The Court has examined Title 62, Chapter 5, Part 5, the part of the Tennessee Code Annotated which addresses cremation and which contains § 62-5-511. The statute gives several circumstances in which the operator of a crematory facility would not be held liable. However, the statute does not indicate that these are the only circumstances in which the operator would not be held liable, nor does the statute indicate that this is the exclusive remedy for recovering from the operator of a crematory facility. The final subsections of § 62-5-511 state that the section neither creates a new cause of action nor substantive legal right and directs that the section has no affect on other legal defenses that might be available to a crematory operator. Tenn. Code Ann. § 62-5-511(d)-(e).

If this statute were meant to be the exclusive legal remedy for any misdeed by a crematorium, it appears to the Court that the legislature, when making these other statements about the statute's legal effect, would have stated the exclusivity of the statute's relief as it has done with other statutory schemes. See Tenn. Code Ann. § 50-6-108, "Exclusive rights and remedies; third party indemnity," (stating explicitly "The rights and remedies granted to an employee subject to this chapter . . . shall

exclude all other rights and remedies of the employee . . ."). Accordingly, the Court finds that Tennessee Code Annotated § 62-5-511 is not the exclusive remedy for persons wronged by crematoriums, but rather, the Court finds that the statute states specific instances where crematorium operators may not be liable for wrongs under certain circumstances unless the actions or omissions were made with malicious purpose, in bad faith, or in a wanton or reckless manner.

While the Court finds that § 62-5-511 is not the exclusive remedy for wrongdoing by a crematorium, it has nonetheless been cited by the Plaintiff's as the statutory basis for their negligence per se claim. In reviewing § 62-5-511, as the underlying statute for the negligence per se claim, the Court finds that a genuine issue of material fact remains as to whether, first, Mark's cremains were "released and disposed of in accordance with the instructions set forth by the decedent or an heir" so as to invoke the heightened standards of § 62-5-511 as a hurdle to a successful negligence per se claim. Further, assuming the heightened standard applies, the Court also finds that a genuine issue of material fact remains as to whether the Defendants' behavior was reckless and, thereby, negligent per se under the statute.

First, there remains a factual issue of whether the incorrect distribution can constitute disposal "in accordance with the instructions set forth by the decedent or an heir," so as to invoke the heightened requirement of recklessness. Even if recklessness is the applicable standard, the Court finds that the Parents have alleged facts which could support a finding of reckless behavior following the cremation of the decedent and during the release and disposal of the cremains.

Reckless conduct occurs "when the person is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances" Doe, 154

S.W.3d at 37 (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 (Tenn.1992)), and in Tennessee, the reckless tortfeasor is only liable to persons who fall within the reasonably foreseeable scope of the particular substantial and unjustifiable risk consciously disregarded by the tortfeasor, Doe, 154 S.W.3d at 39. The Parents have alleged that the Defendants: initially mailed the wrong cremains to them; after learning of the mistake, incorrectly informed them that their son's cremains were buried at the Tennessee Veterans' Cemetary; and only after two disinternments and almost a month of inquiry, delivered the proper cremains to the Parents. The Court finds that a jury could conclude that these actions included consciously disregarding the standard of care implicated when dealing with human remains and that the Defendants' conduct constituted a gross deviation. A jury could also find that the Parents, as close relatives, were persons who fall within the reasonably foreseeable scope of the particular substantial and unjustifiable risk.

Accordingly, the Court finds that genuine issues of material fact remain as to the Parents' negligence/negligence per se claims contained in Count I, and therefore, summary judgment is not warranted on these claims.

2. Reckless Infliction of Emotional Distress (Count II)

Turning to the Parents' claim for reckless infliction of emotional distress, under the laws of Tennessee, there are three elements of a reckless infliction of emotional distress claim: first, the conduct complained of must have been reckless; second, the conduct must have been so outrageous that it is not tolerated by civilized society; third, the conduct complained of must have caused serious mental injury. Doe v. Roman Catholic Diocese of Nashville, 154 S.W.3d 22, 41 (Tenn. 2005) (citing Bain v. Wells, 936 S.W.2d 618, 622 (Tenn. 1997)). The Court again finds that, viewing the facts in the light most favorable to the Parents, a genuine issue of material fact exists as to whether the

Defendants' behavior was reckless. However, the Court cannot find, even taken the facts alleged in the light most favorable to the Plaintiffs, that the conduct alleged rises to a level of outrage so severe that it cannot be tolerated by civilized society.

The Court has reviewed the facts and finds that the three-way mistaken distribution of cremains and resulting confusion does not rise to the level of extreme conduct required under the outrageous conduct prong of a reckless infliction of emotional distress claim. A review of other cases confirms that facts more egregious than those present in this case are required to say that outrageous conduct has been demonstrated. See Johnson v. Woman's Hosp., 527 S.W.2d 133 (Tenn. Ct. App. 1975) (finding outrageous conduct where a hospital assured a patient that it would "take care of" the body of an infant that expired shortly after birth, but later presented the patient with the body of the fully-formed infant in a jar of formaldehyde); see also Brown v. Matthews Mortuary, Inc., 118 P.2d 37 (Idaho 1990) (finding summary judgment appropriate because of an absence of outrageous conduct where heirs received cremains and upon opening the box found the cremains were those of someone other than the deceased and where the actual cremains were not returned to the family). The facts presented in this case simply are not so conspicuously offensive as to rise to the required level of outrage. Accordingly, the Court finds that no genuine issue of material fact remains as to the Parents' claim for reckless infliction of emotional distress, because, as a matter of law, a reasonable jury could not find that the facts, as plead by the Plaintiff, include conduct constituting reckless infliction of emotional distress.

In sum, after considering the foregoing, the filings of the parties, and pertinent statutes and case law, the Court concludes that the Defendants are not entitled to judgment as a matter of law on the Parents' negligence claims (Count I). However, the Defendants are entitled to judgment as a

matter of law on the Parents' claim of reckless infliction of emotional distress (Count II) because the facts as pleaded, even when viewed in the light most favorable to the Parents, do not establish an essential element of reckless infliction of emotional distress, specifically, outrageous conduct that cannot be tolerated by a civilized society. Accordingly, the Defendants' Motion for Summary Judgment **[Doc. 33]** is **DENIED as to the Parents' negligence and negligence per se claims (Count I)** and **GRANTED as to the Parents' claims for reckless infliction of emotional distress (Count II)**.

*C. The Issue of a Hold-Harmless Agreement or Obligation to Indemnify*

In their final dispositive motion [Doc. 33], the Defendants raise the issue of whether the Plaintiffs, through Brad Logan Gibson agreed to hold the Defendants harmless and undertook an obligation to indemnify. This allegation forms the basis of the counterclaim that the Defendants have made in the Amended Answer [Doc. 39], which was filed after the hearing in this matter. Brad Gibson, as counter-defendant, answered the counterclaim on July 27, 2009, after the hearing in this matter. [Doc. 42]. The Court will address the counter-claim if, and when, dispositive motions are filed.

## IV. CONCLUSION

The Court finds that no issue of material fact exists as to the Plaintiffs' claim for relief for reckless infliction of emotional distress. However, the Court finds that there are genuine issues as to material facts as to Plaintiffs Marilyn Dee Gibson and Fred Logan Gibson's claim for negligence and negligence per se.

Accordingly, an order will be entered:

1. **DENYING AS MOOT** Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment **[Doc. 9]** and Second Motion to Dismiss **[Doc. 17]** because the relief sought is incorporated in the Second Motion for Summary Judgment [Doc. 33] and Motion to Dismiss Amended Complaint [Doc. 24];

2. **DENYING** the Motion to Dismiss Amended Complaint **[Doc. 24]**; and

3. **GRANTING** Defendants' Second Motion for Summary Judgment **[Doc. 33] in so far as it seeks summary judgment as to the Brothers' and the Parents' claims for reckless infliction of emotional distress (Counts II and III)** but **DENYING the motion in so far as it seeks summary judgment as to the Parents' negligence and negligence per se claims (Count I).**

And the Court shall address the issue of indemnity or any agreement to hold-harmless after the filing of any dispositive motions.

**IT IS SO ORDERED.**

ENTER:

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge